KATE CLANCY, Appellant, *v.* NEW YORK AND QUEENS COUNTY RAILWAY COMPANY, Respondent.

WILLIAM A. CLANCY, Appellant, *v.* NEW YORK AND QUEENS COUNTY RAILWAY COMPANY, Respondent.

*Negligence — injury from the fall of electric trolley wires in a street —* res ipsa loquitur — *effect of proof that the wires were broken by the slipping of a trolley pole from the trolley wire.*

The breaking of several overhead trolley wires at a street intersection, where a branch of an electric street railway emerges from the main line, warrants the application of the doctrine of *res ipsa loquitur.*

Evidence that the breaking of the wires was caused by the trolley pole of a car slipping from the trolley wire and striking against the cross wires, and that the slipping of trolley poles from trolley wires is a matter of hourly occurrence in the operation of the street railway, does not relieve the street railway company from the imputation of negligence, but rather establishes that fact more clearly.

APPEALS by the plaintiffs, Kate Clancy and William A. Clancy, respectively, from a judgment of the Supreme Court in favor of the defendant in each of the above-entitled actions, entered in the office of the clerk of the county of Queens on the 16th day of December, 1902, upon the dismissal of the complaint by direction of the court after a trial at the Queens County Trial Term.

*M. P. O'Connor* [*J. Brownson Ker* with him on the brief], for, the appellants.

*George F. Hickey* [*William E. Stewart* with him on the brief] for the respondent.

HOOKER, J.:

These are two actions tried together; the former is brought by Kate Clancy for personal injuries she received on account of the falling of trolley wires, and the second is instituted by her husband for damages for loss of her services while she was suffering from the injuries sustained at that time. The defendant was operating a street railway, using electricity as a. motive power, by the system of overhead trolley. At the intersection of Borden and Vernon avenues, in the borough of Queens, a branch line of defendant's railroad turns from the former into the latter thoroughfare, and the support of the four trolley wires, one over each track at this point, requires a number of poles and supporting guy wires. These, in addition to the four main trolley wires, comprise what some of the witnesses term "a network of wires." On the 26th of June, 1902, in crossing a certain part of the intersection of these two streets the plaintiff Kate Clancy was injured by the fall of a number of these wires, variously estimated by the witnesses at from two to several. At least two of them were the main trolley wires, and their fall, coming in contact as they did with the ground and with the rails, caused circuits of electricity to be completed. It is not clear whether Mrs. Clancy was injured by physical contact with the wire as it fell, or by one of these currents; nor is it material, for under the cases the defendant is liable in either event. (*O'Flaherty* v. *Nassau Electric R. R. Co.*, 34 App. Div. 74.) Not content to rest their case upon the proof of these facts, the plaintiffs undertook to show what caused the wires to fall. A flat work car was pro-

ceeding along Borden avenue, and as it turned the curve into Vernon avenue the trolley pole slipped off the trolley wire and came in contact with some of the supporting wires in such a manner as probably to cause their fall, for the wires fell immediately thereafter. One of the witnesses said that the trolley pole slipped off the wire, and immediately after that the pole skipped over one cross wire and hit the other, and then they fell. We see no reason why the doctrine of *res ipsa loquitur*, so often held by the courts to apply to cases where trolley wires have fallen into the streets or upon persons there, should not control here. (*O'Flaherty* v. *Nassau Electric R. R. Co., supra; Jones* v. *Union Railway Co.*, 18 App. Div. 267; *Caglione* v. *Mount Morris Electric Light Co.*, 56 id. 191; *Griffen* v. *Manice*, 166 N. Y. 188; *Mullen* v. *St. John*, 57 id. 567.) It cannot be doubted that had the plaintiffs not sought to show the cause of the accident, a *prima facie* case would have been made out under the principle of law laid down in the cases cited. The defendant contends that the plaintiffs' explanation of the cause of the accident excuses any apparent negligence. Proof of the falling of the wires raises a presumption that the defendant was in some manner negligent, either in their construction or maintenance, and this presumption has the force to require the submission of the question of negligence to the jury until it is rebutted, or until evidence is adduced explaining away the apparent negligence.

To sustain the judgment it is contended that the slipping of the trolley pole off the trolley wire, and the striking of that pole against the cross wires, is sufficient explanation, and the court is urged to take judicial notice of the fact that the slipping of trolley poles from trolley wires is a matter of hourly occurrence in the operation of street surface railways. We do not undertake to say that the court will take judicial notice of that fact, but upon respondent's solicitation we are willing to consider it in the disposition of this appeal, and think that the fact completes the chain of circumstances so that the doctrine of *res ipsa loquitur* is, if possible, more truly applicable. If it is a fact that trolley poles slip off the wires so frequently, then the inference of the defendant's negligence, even in construction or maintenance, is to be drawn from the fact of several wires falling at the intersection of two lines of street railway, as a result of the mere release of the trolley pole and its coming in contact with two of the

cross wires. The negligence of the defendant did not consist in the escape of the trolley pole; there was a presumption of it from the fall of the wires.

The judgment in each case should be reversed and a new trial granted, costs to abide the event.

BARTLETT, WOODWARD, HIRSCHBERG and JENKS, JJ., concurred.

. Judgments reversed and new trials granted, costs to abide the event.