# CHARLESTON.

First National Bank of Kenova *v.* Tri-State Equipment & Repair Co. *et al.*

(No. 6521)

Submitted March 4, 1930. Decided March 18, 1930.

*Browning & Reed,* and *Fitzpatrick, Brown & Davis,* for appellants.

*Vinson, Thompson, Meek & Scherr, J. M. Rigg,* and *W. T. Lovins,* for appellee.

HATCHER, JUDGE:

This is a creditors suit in which the circuit court cancelled certain notes and a deed of trust securing them, given in the name of Tri-State Equipment & Repair Company, as having been executed without corporate authority.

A charter was issued to Tri-State Equipment & Repair Company on July 5, 1921, authorizing it to operate a machine shop, do general repair business, contract buildings, purchase, sell and install machinery, acquire real estate, etc. On July

9, 1921, the directors of the company resolved to purchase from Sutton Construction Company certain real estate at the price of $4,459.46 and certain buildings and material at the price of $13,893.53. The consideration for the real estate was to be cash or stock in the Repair Company; and that for the other property was to be in stock of the purchasing company. A deed for the real estate was executed by the Construction Company to the Repair Company on that day, reciting a cash consideration of *$4,559.46*. The stockbook of the Repair Company shows that a certificate for 200 shares of the par value of $100.00 per share was issued to W. D. Sutton on July 11, 1921. Sutton was the president and general manager, and I. C. Otis was the secretary-treasurer of both companies. No personal consideration appears to have passed from Sutton to the Repair Company for this stock. I. W. Hevner, a stockholder and director of the Repair Company testifies that Sutton stated he would act as trustee for the stock due the Construction Company, and that what was due it was included in the 200 shares. About the same time the Repair Company borrowed $2,500.00 from the plaintiff. Appellant's brief recites that in 1922, notes of the Repair Company to the amount of $20,000.00 secured by a deed of trust on its property were executed to the Construction Company. A. S. Glenn, a director of the Repair Company and assistant general manager of the Construction Company, was the trustee and the trust deed was placed of record. These notes and this trust deed are not in the printed record, but appellee's brief treats them as having been given. They were executed without any express authority from the stockholders or board of directors. Neither Sutton, Otis nor Glenn testify, and there is no evidence explaining or justifying the transaction. In July, 1925, Sutton had the trust deed of 1922 released. The notes were presumably cancelled. He then executed another trust deed in the name of the Repair Company to Ben Williamson, Jr., as trustee, to secure the payment of three promissory notes aggregating $20,000.00, made in the name of the Repair Company to the Construction Company. The deed and the notes are dated July 31, 1925. These notes were assigned by the payee to Ben Williamson Company to secure "any and

all debts already or thereafter incurred'' by the payee to the assignee. This transaction was also without express authority from the stockholders or board of directors of the Repair Company. It seems that no formal meetings of this board or of the stockholders were had after 1921. Hevner testifies that the ''affairs'' of the Company were conducted entirely by Sutton and Otis. The debt of the Repair Company to plaintiff was credited with $100.00 and the balance, as well as another obligation of the Repair Company to it, reduced to judgment.

Sutton and Otis had no authority by reason of their official positions to execute notes of the Repair Company. While they handled its ''affairs'' there is no evidence that they had ever signed notes in its name other than herein referred to. From that evidence, we cannot infer such a ''custom or usage'' as would imply general authority from the board of directors for that purpose. 2 Thompson on Corporations, (3rd Ed.), sec 1537; 4 Cook on Corporations (8th Ed.) page 3088; Fletcher, Cyclopedia, Corporations, sec. 1934; Mechem on Agency (2nd Ed.) 998; *Varney & Evans* v. *Lumber Co.* 70 W. Va. 169, 73 S. E. 321; *Wagon Co.* v. *Mfg. Co.*, 102 W. Va. 16; 135 S. E. 242; *Realty Co.* v. *Supply Co.*, 107 W. Va. 290, 294, 148 S. E. 122. Even if the board of directors had the power to direct the execution of a deed of trust on all of the tangible property of the Repair Company without the consent of the stockholders (which is very doubtful, see *Kyle* v. *Wagner*, 45 W. Va. 349, 32 S. E. 213, that authority did not extend to Sutton and Otis merely as directors or as officers of the company. ''A mortgage executed in the name of a corporation by its officers, without authority from the board of directors, is void.'' *Bell etc. Co.* v. *Glass Works Co.*, (Ky.) 48 S. W. 440. Thompson, *supra*, 2636; Fletcher, *supra*, sec. 1936; Mechem, *supra*, sec. 1004.

Counsel point to the familiar rule of presumption of authority when a corporate paper is executed by the proper officials. That rule has no application here, because of the positive and uncontradicted evidence of Hevner that Sutton and Otis had no such authority from the stockholders or board of directors. ''When the facts themselves are in evidence,

there is no place for a presumption as to those facts." *Burge* v. *Rag Co.,* 244 Mo. 76, 95, 148 S. W. 925; *Realty Company* v. *Supply Company, supra,* p. 296, 148 S. E. 122; *Dwight* v. *Hazlett,* 107 W. Va. 192, 147 S. E. 877.

Counsel raise the question of ratification by the stockholders.. Ratification depends on actual, not constructive information. 3 Thompson, *supra,* sec. 2133; *Thompson* v. *Mfg. Co.,* 60 W. Va. 42, 51; 7 R. C. L., p. 664, sec. 665; *Clark and Marshall,* Private Corporations, sec. 717. "Ratification is not to be lightly presumed from silence alone: certainly not, where the act is wholly beyond the ordinary duties of the officers or agents performing." Beach on Private Corporations, sec. 196. Hevner further denies (without contradiction) that the execution of the notes and the trust deed was ever discussed by the stockholders and directors as such, or that he personally had any information whatever thereof until 1927. Even if it be admitted that a void act can be ratified (which is denied by *Westerlund* v. *Mining Co.,* 203 Fed. 599, a case cited by appellant, *Mill Co.* v. *Lbr. Co.,* 19 Wash. 165, and many other responsible authorities), there is no evidence here of ratification.

Counsel contend that by reason of the inactivity of the board of directors and the stockholders of the Repair Company and of the aggressiveness of Sutton and Otis in its management, more extensive power became vested in them than in ordinary administrative officers, citing Fletcher, *supra,* sec. 2097, etc. Even so, whatever delegation of power may be implied in their favor was necessarily limited to business in the interest of the Repair Company—not in the interest of a different corporation. Fletcher extends the apparent power of such officers only to acts "performed in the ordinary course of business and without fraud." The acts complained of here were entirely without the business entrusted to Sutton and Otis.

The Repair Company having agreed to pay its stock for the property of the Construction Company, and both stock and property respectively having been delivered without reservation or condition, it is not apparent how the Repair Company was under any further obligation to the Construction Com-

pany. The latter became a stockholder in the former, and as such had no right to rue the bargain, and exact notes in payment for the property already paid for by the stock held by Sutton as its trustee. The notes and trust deed in 1922 were entirely gratuitous and illegal. Therefore, the cancellation of those papers cannot serve as a valid consideration, as appellant contends, for the execution of the notes and deed of trust in 1925. The latter transaction was also without consideration. In effect, it was simply a pledge by Sutton and Otis of the notes and property of the Repair Company, as security for the obligation of the Construction Company. The Repair Company was not interested directly or collaterally in the credit extended the Construction Company by the Williamson Company. The Repair Company could not in the most formal way have legalized the execution of the notes and deed of trust merely for use as collateral by the Construction Company, as such purpose was not within the charter of the Repair Company and was not a necessary or usual incident to its business. ''A corporation has no implied power to lend its credit to another by issuing or indorsing notes for his accommodation, where the transaction is not related to the business activity authorized by its charter as a necessary or usual incident thereto.'' 14-a C. J., p. 732, sec. 2781; 7 R. C. L., p. 602, sec. 596; Mechem, *supra,* sec. 1003; Morawetz on Private Corporations (2nd Ed.) sec. 423; *Bortner* v. *Leib,* 146 Md. 530, 537-8; *Webster & Co.* v. *Machine Co.,* 54 Conn. 394; *Taupt* v. *Vint,* 68 W. Va. 657, 660; *Brown* v. *Coal Co.,* 95 W. Va. 658. Hence the transaction was doubly invalid.

Counsel further contend that the plaintiff as creditor cannot assail the validity of the notes and trust deed. They cite among other authorities to the same effect, *Thompson* v. *Mfg. Co., supra,* p. 50, which says: ''Where officers of a corporation, without authority, have given liens upon its property by mortgage, third parties, such as unsecured creditors, cannot impugn the transaction on the sole ground of want of authority in the officers.'' This statement is obiter, but is seemingly sound as far as it goes. While a creditor may not attack such a transaction on the sole ground of want of authority, he may attack it when it is illegal or when its effect

is to divert fraudulently the corporate assets, which could otherwise be subjected to the payment of his debt. 14-a C. J. p. 336-7; Fletcher, *supra,* sec. 5051; Thompson, *supra,* sec. 2910; Morawetz, *supra,* sec. 791; *State ex rel. v. Perkins,* 90 Mo. A. 603; *Hess* v. *Lbr. Co.,* (Wash.) 245 Pac. 753, 47 A. L. R. 71, and cases cited in annotation commencing on page 78. "In the case of a corporation, as in that of a natural person, any conveyance of its property, without authority of law, in fraud of its creditors is void as to them." *Richardson* v. *Green,* 133 U. S. 30.

With much industry, counsel for appellant have arrayed many cases in support of their contentions. But in those citations the corporations whose acts were in question had either made an ineffectual attempt through boards of directors to authorize the act, or had received some benefit from the transactions, or the directors and stockholders with full knowledge of the transactions had remained silent so long as to imply acquiescence, or there was some other material difference from this case.

The decree of the circuit court is accordingly affirmed.

*Affirmed.*